**STATE of Ohio ex rel. GELESH, Appellant,**

v.

**STATE MEDICAL BOARD OF OHIO, Appellee.**

[Cite as *State ex rel. Gelesh v. State Med. Bd. of Ohio,* 172 Ohio App.3d 365, 2007-Ohio-3328.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–1072.

Decided June 29, 2007.

366

Porter, Wright, Morris & Arthur, L.L.P., Eric J. Plinke, and Kristin E. Matisziw; Lambert & MacDonald, Co., L.P.A., and John D. Lambert, for appellant.

Marc Dann, Attorney General, and Kyle C. Wilcox and Damion M. Clifford, Assistant Attorneys General, for appellee.

FRENCH, Judge.

{¶ 1} Relator-appellant, Gary Charles Gelesh, D.O., appeals from the judgment of the Franklin County Court of Common Pleas dismissing his joint complaint for declaratory and injunctive relief and petition for a writ of mandamus against respondent-appellee, the State Medical Board of Ohio. For the following reasons, we affirm.

{¶ 2} On May 19, 2005, pursuant to R.C. 119.07, the board mailed a notice of opportunity for a hearing to Dr. Gelesh, a practitioner of osteopathic medicine. The notice informed Dr. Gelesh of the board's intention to determine whether to limit, revoke, suspend, or refuse to register or reinstate his certificate to practice osteopathic medicine and surgery or to reprimand him or place him on probation for " '[a] departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances' " pursuant to R.C. 4731.22(B)(6).

{¶ 3} The board's allegation that Dr. Gelesh violated R.C. 4731.22(B)(6) arose out of Dr. Gelesh's treatment of "Patient 1" in February 2002. In the notice, the board alleged the following facts:

On or about February 7, 2002, Patient 1, approximately 88 years of age, was transported by ambulance from an assisted living facility to the emergency room of Akron General Medical Center, Akron, Ohio, where you were providing services as an emergency room physician. Upon your examination of Patient

1, she was found to be hypotensive with complaints of abdominal pain. Patient 1 had a history of heart disease, and had executed a do not resuscitate/comfort care only directive. You concluded that Patient 1 was not a surgical candidate and she was provided comfort care treatment in the emergency room under your direction.

On or about February 8, 2002, you requested that the nurse assisting you with the care of Patient 1 obtain medication for Patient 1. Hearing that you ordered Anectine (succinylcholine), the nurse returned to Patient 1's room with Anectine, and asked you if that was the medication you wanted. The nurse handed you the container of medication, and you administered the medication to the patient. Patient 1 died a short time thereafter of respiratory arrest due to the administration of succinylcholine.

In deposition, you testified that when the nurse returned to Patient 1's room with the medication, you heard the nurse say something, but you did not hear what she said. You further testified that you assumed the medication handed to you was what you had ordered, a benzodiazepine, although you could not recall whether you had ordered Ativan or Versed.

The notice advised Dr. Gelesh of his right to request a hearing on the matters addressed in the notice.

{¶ 4} On December 7, 2005, Dr. Gelesh filed a joint complaint for declaratory and injunctive relief and petition for writ of mandamus in the Franklin County Court of Common Pleas. Dr. Gelesh requested a declaratory judgment that he is entitled to statutory immunity from disciplinary action by the board, injunctive relief enjoining the board from pursuing discipline against him, and a writ of mandamus compelling the board to comply with R.C. 2133.11, which provides immunity from professional disciplinary action to physicians carrying out in good faith the responsibility to provide comfort care within the scope of their authority. On December 21, 2005, the board filed a motion to dismiss Dr. Gelesh's complaint and petition pursuant to Civ.R. 12(B)(6).

{¶ 5} On September 26, 2006, the trial court issued a final judgment entry granting the board's motion to dismiss. Noting that courts should exercise caution in granting injunctions, especially against other departments of government, the trial court found injunctive relief inappropriate. The court then addressed the parties' primary legal argument, regarding the board's authority to proceed with a disciplinary adjudication in light of R.C. 2133.11. The court noted the General Assembly's failure to specify any procedural mechanism to determine the applicability of R.C. 2133.11 immunity and the inherently fact-specific nature of any such determination. The court concluded that "[b]ecause the Medical Board otherwise has plenary jurisdiction and, ordinarily, conducts all evidentiary hearings addressed to the professional conduct of those within its licensing

authority, the most logical reading of R.C. [2133.11] is that the Medical Board should in the first instance make all factual findings relative to conduct by Dr. Gelesh, including whether 'immunity' is available to him." Therefore, the trial court dismissed Dr. Gelesh's claim for declaratory relief. Lastly, because it found that Dr. Gelesh had an adequate remedy through administrative proceedings under R.C. Chapter 119, the trial court denied Dr. Gelesh's request for a writ of mandamus.

{¶ 6} Dr. Gelesh filed a timely notice of appeal and now asserts the following assignment of error:

The trial court erred as a matter of law in dismissing the declaratory judgment action where the moving party was not entitled to dismissal as a matter of law because the trial court abrogated its jurisdiction over declaratory actions by deferring to the board.

By its express language, Dr. Gelesh's assignment of error pertains solely to his claim for declaratory relief and not to his claims for injunctive relief or a writ of mandamus. Under his assignment of error, Dr. Gelesh argues that he was entitled to a determination by the trial court of his entitlement to immunity under R.C. 2133.11 before the board could proceed against him in any disciplinary proceeding.

{¶ 7} A declaratory-judgment action is a civil action that provides a remedy in addition to other legal and equitable remedies available. *Aust v. Ohio State Dental Bd.* (2000), 136 Ohio App.3d 677, 681, 737 N.E.2d 605. The three essential elements for declaratory relief are that (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. *Burger Brewing Co. v. Liquor Control Comm.* (1973), 34 Ohio St.2d 93, 97, 63 O.O.2d 149, 296 N.E.2d 261, citing *Am. Life & Acc. Ins. Co. v. Jones* (1949), 152 Ohio St. 287, 296, 40 O.O. 326, 89 N.E.2d 301. A court may dismiss a declaratory-judgment action, pursuant to Civ.R. 12(B)(6), only when (1) no real controversy or justiciable issue exists between the parties or (2) the declaratory judgment will not terminate the uncertainty or controversy. *AEI Group, Inc. v. Ohio Dept. of Commerce* (1990), 67 Ohio App.3d 546, 550, 587 N.E.2d 889, citing *Fioresi v. State Farm Mut. Auto. Ins. Co.* (1985), 26 Ohio App.3d 203, 203–204, 26 OBR 424, 499 N.E.2d 5.

{¶ 8} Although the parties disagree as to the standard applicable to our review of the trial court's dismissal of Dr. Gelesh's declaratory-judgment action, the Ohio Supreme Court recently clarified the standard of review applicable on appeal from a trial court's dismissal of an action for declaratory judgment. Whereas an appellate court normally reviews dismissals pursuant to Civ.R. 12(B)(6) under a de novo standard, see *Fugett v. Ghee,* Franklin App. No. 02AP–618, 2003-Ohio-1510, 2003 WL 1563816, at ¶ 11, the Supreme Court held that

"[d]ismissal of a declaratory judgment action is reviewed under an abuse-of-discretion standard." *Mid–Am. Fire & Cas. Co. v. Heasley,* 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, paragraph two of the syllabus; *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 65 O.O.2d 179, 303 N.E.2d 871, followed. In *Heasley,* the trial court granted a Civ.R. 12(B)(6) motion to dismiss the plaintiff insurance company's action for a declaration that it owed no uninsured/underinsured-motorist coverage to Heasley, finding that no actual, justiciable controversy existed between the parties. This court affirmed. Noting a conflict between appellate districts regarding the appropriate standard of appellate review from a trial court's dismissal of a declaratory-judgment action, the Supreme Court rejected the insurance company's argument for de novo review and "reaffirm[ed] that declaratory judgment actions are to be reviewed under an abuse-of-discretion standard." Id. at ¶ 14. See, also, *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App.3d 183, 530 N.E.2d 928. Accordingly, we review the trial court's dismissal of Dr. Gelesh's claim for declaratory relief for an abuse of discretion. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's action was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 9} The primary issues before this court stem from the interplay between R.C. 4731.22, which authorizes the board to discipline those within its licensing authority, and R.C. 2133.11, which establishes the immunity to which Dr. Gelesh claims entitlement here. Thus, we begin our analysis with the language of those statutes, remaining mindful that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply the rules of statutory interpretation. *State ex rel. Jones v. Conrad* (2001), 92 Ohio St.3d 389, 392, 750 N.E.2d 583. " 'In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended * * * we rely only on what the General Assembly has actually said.' " Id., quoting *Muenchenbach v. Preble Cty.* (2001), 91 Ohio St.3d 141, 149, 742 N.E.2d 1128 (Moyer, C.J., dissenting). A court may interpret a statute only when the words of the statute are ambiguous. *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601.

{¶ 10} R.C. Chapter 4731 governs the practice of medicine in Ohio and provides for the appointment of a state medical board to carry out the purposes of the chapter. The General Assembly bestowed upon the board administrative powers to " 'safeguard the public's interest in having competent, properly trained and educated, and experienced doctors.' " *Gladieux v. Ohio State Med. Bd.* (1999), 133 Ohio App.3d 465, 470, 728 N.E.2d 459, quoting *Midwestern College of Massotherapy v. Ohio Med. Bd.* (1995), 102 Ohio App.3d 17, 23, 656 N.E.2d 963.

The board is specifically empowered to investigate violations of R.C. Chapter 4731 and to discipline those within its licensing authority. R.C. 4731.22(A) and (B) set forth grounds upon which the board may discipline physicians. As applicable here, the board may discipline a physician for "[a] departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established." R.C. 4731.22(B)(6). Pursuant to R.C. 4731.22(C), "[d]isciplinary actions taken by the board under divisions (A) and (B) of this section shall be taken pursuant to an adjudication under Chapter 119. of the Revised Code * * *."

{¶ 11} While the board possesses authority to investigate alleged violations of R.C. Chapter 4731 and to discipline physicians for violations, R.C. 2133.11 establishes immunity from criminal prosecution, civil liability in damages, and "professional disciplinary action" for enumerated health care personnel, including physicians, in specified circumstances relating to care for terminally ill patients. R.C. 2133.11 provides:

(A) Subject to division (D) of this section, an attending physician, consulting physician, health care facility, and health care personnel acting under the direction of an attending physician are not subject to criminal prosecution, are not liable in damages in a tort or other civil action, and are not subject to professional disciplinary action for any of the following:

* * *

(6) Prescribing, dispensing, administering, or causing to be administered any particular medical procedure, treatment, intervention, or other measure to a qualified patient or other patient, including, but not limited to, prescribing, personally furnishing, administering, or causing to be administered by judicious titration or in another manner any form of medication, for the purpose of diminishing the qualified patient's or other patient's pain or discomfort and not for the purpose of postponing or causing the qualified patient's or other patient's death, even though the medical procedure, treatment, intervention, or other measure may appear to hasten or increase the risk of the patient's death, if the attending physician so prescribing, dispensing, administering, or causing to be administered or the health care personnel acting under the direction of the attending physician so dispensing, administering, or causing to be administered are carrying out in good faith the responsibility to provide comfort care [1] described in division (E)(1) of section 2133.12 of the Revised Code.

---

1. "Comfort care" means the administration of nutrition, hydration, and any other medical or nursing procedure, treatment, intervention, or measure taken to diminish a patient's pain or discomfort, but not to postpone the patient's death. R.C. 2133.01(C).

\* \* \*

(D) This section does not grant an immunity from criminal or civil liability or from professional disciplinary action to health care personnel for actions that are outside the scope of their authority.

By its express terms, R.C. 2133.11 provides immunity to a physician, acting in good faith and within the scope of his or her authority, for administering or causing to be administered any medication while carrying out the responsibility to provide comfort care.

{¶ 12} Of paramount concern to the parties' dispute is the meaning of "professional disciplinary action," as used in R.C. 2133.11. Whereas the board argues that declaratory relief here would inappropriately bypass the special statutory scheme created by R.C. 4731.22, Dr. Gelesh contends that the General Assembly itself created a bypass to the statutory scheme by providing immunity, not only from disciplinary sanctions, but from the entire disciplinary process. Dr. Gelesh asserts that by providing immunity from "professional disciplinary action," R.C. 2133.11 unambiguously provides immunity from the entire disciplinary process. Accordingly, Dr. Gelesh argues that he was entitled to a determination by the trial court of his entitlement to immunity before the board could proceed with any disciplinary process. On the other hand, the board contends that it, not the trial court, must determine the facts necessary to establish Dr. Gelesh's entitlement to immunity. Although it does not offer any specific argument regarding ambiguity in the term "professional disciplinary action," the board clearly advocates that R.C. 2133.11 immunity does not extend to disciplinary adjudications by the board but provides an affirmative defense to the disciplinary sanctions authorized by R.C. 4731.22(A) and (B).

{¶ 13} Dr. Gelesh's contention that R.C. 2133.11 immunity encompasses the entire disciplinary process turns on his interpretation of the term "professional disciplinary action," which the General Assembly defined as "action taken by the board or other entity that regulates the professional conduct of health care personnel, including the state medical board and the board of nursing." R.C. 2133.01(Y). We disagree with Dr. Gelesh's assertion that the term "professional disciplinary action" is unambiguous and includes the entire disciplinary process contemplated by R.C. 4731.22 and R.C. Chapter 119. "It is firmly established that a statute is ambiguous when its language is subject to more than one reasonable interpretation." *Family Med. Found., Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034, 772 N.E.2d 1177, at ¶ 8, citing Jordan, 89 Ohio St.3d at 492, 733 N.E.2d 601. As used in R.C. 2133.11 and defined in R.C. 2133.01(Y), the term "professional disciplinary action" is susceptible of reasonable interpretation to encompass the disciplinary sanctions authorized by R.C. 4731.22(A) and (B) or

to encompass the entire disciplinary process. Therefore, we find it ambiguous and subject to statutory interpretation.

{¶ 14} "The paramount consideration in determining the meaning of a statute is legislative intent." *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, at ¶ 34. Where a statute is subject to various interpretations, we invoke rules of statutory construction to arrive at the legislative intent. *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057. To determine legislative intent, we review the statutory language, reading the words and phrases in context and construing them in accordance with the rules of grammar and common usage. *State ex rel. Hulls v. State Teachers Retirement Bd. of Ohio,* 113 Ohio St.3d 438, 2007-Ohio-2337, 866 N.E.2d 483, at ¶ 32. Moreover, we read words and phrases in a statute in the context of the whole statute. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 102, 543 N.E.2d 1188.

{¶ 15} In reading the term "professional disciplinary action" in the context of the whole statute, we look at the provisions of immunity in R.C. 2133.11 applicable to criminal and civil actions. In addition to immunity from "professional disciplinary action," R.C. 2133.11 provides immunity from "criminal prosecution" and from "[liability] in damages in a tort or other civil action." Although the statute provides immunity from "prosecution" in criminal cases, its provision of immunity in civil cases is more limited. R.C. 2133.11 does not render a physician immune from all civil proceedings, but only from liability in damages. Disciplinary proceedings by the board are akin to civil actions. See R.C. 4731.22(F)(4) (stating that board hearings and investigations are considered civil actions for purposes of peer-review proceedings); see, also, R.C. 119.12 (requiring a court of common pleas to give priority to R.C. Chapter 119 appeals, including appeals from board disciplinary proceedings, over "all *other* civil cases" [emphasis added]). Accordingly, it is reasonable to read R.C. 2133.11's provision of immunity for "professional disciplinary action" to encompass only disciplinary sanctions in the same way that its provision of immunity in civil actions encompasses only immunity from damages.

{¶ 16} When interpreting an ambiguous statute, a court may also consider other laws upon the same or similar subject in order to determine legislative intent. *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, at ¶ 20. Because R.C. 2133.11 immunity relates to disciplinary actions by the board, R.C. 4731.22, which establishes the board's authority to conduct disciplinary proceedings, may shed additional light on the General Assembly's intent. See id. (stating that statutes relating to the same subject matter must be read together to "arrive at a reasonable construction giving the proper force and effect, if possible, to each statute").

{¶ 17} When R.C. 2133.11 became effective, R.C. 4731.22(B) provided that "[t]he board, [pursuant to an adjudicatory hearing under Chapter 119. of the Revised Code] * * * shall, to the extent permitted by law," impose discipline for one or more of the enumerated reasons. 1990 Am.Sub.H.B. No. 615, 143 Ohio Laws, Part IV, 6067, 6087. Therein, the General Assembly distinguished between the board's imposition of discipline and the means by which the board may impose such discipline. Subsequently, the General Assembly amended R.C. 4731.22 and more specifically distinguished between disciplinary "actions" and adjudication thereof. Under the current version of R.C. 4731.22(B), the board may "limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate" for one or more of the enumerated reasons. R.C. 4731.22(C) states, "Disciplinary actions taken by the board under [division (B) ] of this section shall be taken pursuant to an adjudication under Chapter 119. of the Revised Code * * *." Thus, the General Assembly has clearly distinguished between "disciplinary actions," i.e., the sanctions authorized in R.C. 4731.22(A) and (B), and adjudicatory proceedings in accordance with R.C. Chapter 119. The distinction weighs in favor of an interpretation of "professional disciplinary action" under R.C. 2133.11 as encompassing a disciplinary sanction, not R.C. Chapter 119 adjudicatory proceedings.

{¶ 18} Dr. Gelesh argues that had the General Assembly intended to permit the board to determine a physician's entitlement to R.C. 2133.11 immunity, it would have expressly vested the board with original and exclusive jurisdiction over that determination in a manner similar to the General Assembly's vesting of exclusive jurisdiction in the Ohio Court of Claims to determine state employee immunity. While we find Dr. Gelesh's comparison of R.C. 2133.11 immunity to state-employee immunity appropriate, we reject Dr. Gelesh's argument that the lack of an express grant of exclusive jurisdiction to the board indicates legislative intent to deny the board authority to make that determination. The board does not argue that it has exclusive jurisdiction in all instances to determine the applicability of R.C. 2133.11. Rather, the board maintains only that it may initially make that determination in the context of disciplinary proceedings against a physician.

{¶ 19} Dr. Gelesh's construction of R.C. 2133.11 would necessitate a two-step process, by which the board must issue a notice of opportunity for a hearing, alleging that a physician is not entitled to immunity, and then participate in a declaratory-judgment action to determine the applicability of R.C. 2133.11 immunity before it could proceed with disciplining a physician pursuant to its authority under R.C. 4731.22. The General Assembly expressly created a similar two-step process with respect to state-employee immunity. R.C. 9.86 confers limited,

personal immunity upon a state officer or employee for damage or injury caused in the performance of his duties "unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." In the Court of Claims Act, R.C. Chapter 2743, the General Assembly placed exclusive, original jurisdiction to determine whether a state employee is immune from liability under R.C. 9.86 with the Court of Claims.

{¶ 20} Pursuant to R.C. 2743.02(F), a plaintiff seeking damages from a state officer or employee and alleging that the officer or employee acted manifestly outside the scope of his employment or with malicious purpose or bad faith or in a wanton or reckless manner must first file his claims in the Court of Claims. Until the Court of Claims determines whether the state officer or employee is immune under R.C. 9.86, the court of common pleas lacks subject-matter jurisdiction. *Hamilton v. Wilkinson*, Franklin App. No. 04AP–502, 2004-Ohio-6982, 2004 WL 2944154, at ¶ 7, citing *Suver v. Morris* (Jan. 8, 1991), Franklin App. No. 90AP–898, 1991 WL 2186.

{¶ 21} Dr. Gelesh's construction of R.C. 2133.11 would read into the statute a requirement similar to that expressly established by the General Assembly with respect to state-employee immunity. Had the General Assembly intended such a result, it could have provided for it in either R.C. Chapter 2133 or 4731. In the absence of any such expression of legislative intent, we will not read into R.C. 2133.11 or 4731.22 a requirement that the board may not initiate disciplinary proceedings against a physician in cases such as Dr. Gelesh's without participating in a separate action in the court of common pleas to determine the applicability of R.C. 2133.11 immunity.

{¶ 22} Although Dr. Gelesh contends that allowing the board to determine a physician's entitlement to R.C. 2133.11 immunity would have a chilling effect on a patient's right to comfort care, we disagree. Whether the board or a court of common pleas determines in the first instance a physician's entitlement to R.C. 2133.11 immunity, the factual prerequisites to immunity under R.C. 2133.11 necessitate some determination of the underlying facts. We cannot fathom an appreciable impact upon a patient's comfort care from placing the authority to make that determination with the board in the context of disciplinary action rather than with the court of common pleas.

{¶ 23} Having considered the statutory language of R.C. 2133.11 and 4731.22, as well as various tools of statutory construction to aid our interpretation of the ambiguity in R.C. 2133.11, we conclude that R.C. 2133.11 immunity does not preclude the board from determining the applicability of immunity in disciplinary proceedings under R.C. 4731.22 and R.C. Chapter 119.

{¶ 24} We now turn to the board's arguments regarding the inappropriateness of declaratory relief herein. Pursuant to R.C. 2721.02 and 2721.03, courts of common pleas generally have jurisdiction to issue a declaratory judgment regarding a question of construction or validity arising under a statute and to declare rights, status, or other legal relations under it. The Ohio Supreme Court has acknowledged the right to declaratory relief pertaining to the construction and validity of statutes. *Burger Brewing Co.*, 34 Ohio St.2d at 96, 63 O.O.2d 149, 296 N.E.2d 261. Nevertheless, the board argues that the trial court properly dismissed Dr. Gelesh's claim for declaratory relief because such relief would have bypassed a legislative scheme and an available administrative remedy. The board further argues that Dr. Gelesh's declaratory-judgment claim failed because it did not contest the constitutionality or validity of R.C. 2133.11, required a determination of facts, did not satisfy the requirements for declaratory relief, and was moot.

{¶ 25} The board initially argues that the trial court appropriately dismissed Dr. Gelesh's declaratory-judgment action because declaratory relief is improper when used to bypass a legislative scheme. Ordinarily, a declaratory judgment is a remedy in addition to other legal and equitable remedies. *Arbor Health Care Co.*, 39 Ohio App.3d at 186, 530 N.E.2d 928. However, when a specialized statutory remedy is available in the form of an adjudicatory hearing, a suit seeking a declaration of rights that would bypass, rather than supplement, the legislative scheme ordinarily is not permissible. Id. The Ohio Supreme Court has stated that "since it is always inappropriate for courts to grant declaratory judgments * * * that attempt to resolve matters committed to special statutory proceedings, their decisions should always be reversed on appeal, except when they dismiss the actions." *State ex rel. Albright v. Delaware Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 40, 42, 572 N.E.2d 1387.

{¶ 26} Here, the General Assembly has provided a special statutory proceeding applicable to this action. R.C. 4731.22 authorizes the board to enforce the provisions of R.C. Chapter 4731, to investigate violations thereof, to conduct disciplinary proceedings, and to discipline those persons within the board's licensing authority. Furthermore, R.C. Chapter 119 provides an appeal of the administrative proceedings to the court of common pleas. A medical disciplinary proceeding constitutes a special statutory proceeding. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 623, 614 N.E.2d 748. In this case, a determination of the board's allegations against Dr. Gelesh would involve determining many of the same facts necessary to a determination of Dr. Gelesh's entitlement to immunity. Nothing in R.C. 4731.22 excludes the authority to determine whether a physician is immune from discipline under R.C. 2133.11 from the board's authority to conduct disciplinary proceedings. Accordingly, we find that appel-

lant's claim for declaratory relief constituted an improper attempt to bypass the special statutory procedures governing physician discipline.

{¶ 27} In *Aust,* this court affirmed the trial court's dismissal of a dentist's action for a declaratory judgment and injunctive relief. There, the plaintiff-dentist sought a declaration that he was not in violation of the Dental Practice Act and an injunction to stop the dental board's investigation of whether he had violated the Dental Practice Act or a consent agreement, by which he had agreed to a 90–day suspension of his dental license. In part, the trial court dismissed the complaint because the matter was committed to special statutory proceedings. On appeal, we held that "[b]ecause the administrative code provides a forum and procedure for determining whether a dentist has violated the Dental Practice Act, the matter is 'committed to special statutory proceedings,' and the trial court properly dismissed the declaratory judgment complaint." Id., 136 Ohio App.3d at 683, 737 N.E.2d 605. Similarly, here, because the Revised Code provides special statutory proceedings for determining whether a physician has violated R.C. Chapter 4731 and is subject to discipline, including the right to appeal any such determination, pursuant to R.C. 119.12, Dr. Gelesh may not bypass the special statutory proceedings in the guise of obtaining declaratory relief.

{¶ 28} The Ohio Supreme Court has also held that an action for declaratory relief is inappropriate when a plaintiff seeks a determination of statutory rights, without presenting any constitutional issues or challenge to the validity of a statute, but has failed to exhaust his administrative remedies. *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 152, 586 N.E.2d 80. In *Fairview,* the plaintiff-hospital sought a declaratory judgment that Ohio's certificate-of-need laws were inapplicable to Fairview's request for a redesignation of its neonatal intensive-care unit. The trial court granted summary judgment in favor of Fairview and entered the requested declaratory judgment. On appeal, the defendant, the director of health, argued that Fairview failed to exhaust the administrative remedy of an appeal to the Certificate of Need Review Board before seeking declaratory relief. This court reversed the declaratory judgment, noting that Fairview presented no constitutional issues and did not contest the validity of the certificate-of-need laws. The Ohio Supreme Court affirmed our conclusion that "[s]ince there were no constitutional claims, speedy relief in the form of a declaratory judgment was not required to protect Fairview's statutory rights." Id. at 150, 586 N.E.2d 80.

{¶ 29} Similarly, in *Rocky Fork Hunt & Country Club v. Testa* (1997), 120 Ohio App.3d 442, 698 N.E.2d 80, this court reversed a declaratory judgment, where the plaintiff sought a declaration of statutory rights without challenging the validity or constitutionality of the statute. There, after the Franklin County auditor denied the plaintiff's application, pursuant to R.C. 5713.31, for valuation according

to the current agricultural use of certain real property, the plaintiff filed an action for declaratory judgment of its statutory rights rather than appealing to the Franklin County Board of Revision. In reversing the entry of declaratory judgment, this court stated that "[a]s in *Fairview*, allowance of declaratory relief in this case has served to circumvent an adverse decision of an administrative entity and bypass a legislative scheme." Id. at 446, 698 N.E.2d 80.

{¶ 30} Like the plaintiffs in Fairview and *Rocky Fork Hunt & Country Club*, Dr. Gelesh neither raises a constitutional issue nor challenges the validity of any statute. R.C. Chapters 4731 and 119 provide Dr. Gelesh with the right to appeal the board's determination of his entitlement to immunity, and declaratory relief would inappropriately circumvent an adverse decision by the board and bypass the legislative scheme. Moreover, because Dr. Gelesh does not challenge the constitutionality or validity of R.C. 2133.11 or 4731.22, speedy relief in the form of a declaratory judgment was not required to protect Dr. Gelesh's statutory rights. Even should Dr. Gelesh establish that the administrative appeals process provided by statute would take longer than a declaratory-judgment action, the extended time is an insufficient reason to bypass the special statutory proceedings enacted by the General Assembly. See *Arbor Health Care Co.*, 39 Ohio App.3d at 186, 530 N.E.2d 928.

{¶ 31} The board additionally argues that declaratory judgment was inappropriate because the declaration that Dr. Gelesh sought required a determination of facts. In *Smith v. Columbus Mun. Civil Serv. Comm.* (1952), 158 Ohio St. 401, 402–403, 49 O.O. 277, 109 N.E.2d 507, the Ohio Supreme Court held that "[w]here the resolution of the controversy involved in an action for a declaratory judgment depends largely on a determination of facts although it may also involve some determination of the meaning of language in a contract or legislative enactment, the trial court, in the exercise of sound discretion, may either entertain or not entertain such action." Here, the determination of Dr. Gelesh's entitlement to R.C. 2133.11 immunity depends largely on a determination of the facts surrounding his care of Patient 1. Accordingly, we find no abuse of discretion in the trial court's conclusion that those facts are more appropriately determined in the first instance by the board.

{¶ 32} Lastly, the board contends that the trial court appropriately dismissed Dr. Gelesh's declaratory-judgment action because it was moot. Although the board contends that it rendered Dr. Gelesh's action moot by dismissing the notice upon which Dr. Gelesh based his complaint and by mailing a new notice, alleging that Dr. Gelesh had acted in bad faith and outside the scope of his authority in his treatment of Patient 1, the record contains no evidence to that effect. Moreover, even assuming the truth of the board's assertions, the new notice does not moot the question of whether the board possesses authority to

determine Dr. Gelesh's entitlement to immunity or whether that determination must be made by the court of common pleas under its jurisdiction to enter declaratory judgment.

{¶ 33} We recognize that our holding in this case will result in determinations of entitlement to immunity under R.C. 2133.11 being made by the courts of common pleas in the context of criminal and civil cases and by the board in the context of disciplinary actions. However, absent statutory authority for placing such determinations outside the scope of the board's authority to conduct disciplinary proceedings, this court will not condone bypassing the special statutory scheme by the rendering of declaratory determinations of immunity. While having determinations of R.C. 2133.11 immunity uniformly made by either the board or the courts may be a preferable scenario, that result must stem from legislative action, not from the courts.

{¶ 34} Upon review and for the aforestated reasons, we conclude that the trial court did not abuse its discretion in dismissing Dr. Gelesh's action for declaratory judgment. Therefore, we overrule Dr. Gelesh's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

KLATT, J., concurs.

BRYANT, J., dissents.

BRYANT, J., dissenting.

{¶ 35} Being unable to agree with the majority opinion, I respectfully dissent. The majority determines that R.C. 2133.11 is ambiguous and therefore subject to statutory construction. As a result of its analysis, the majority concludes that R.C. 2133.11 precludes the State Medical Board from imposing sanctions against a doctor who complies with the statute, but does not prevent the board from, in effect, seeking to impose disciplinary sanctions against the doctor through disciplinary notice and hearing before the board.

{¶ 36} Unlike the majority, I do not see an ambiguity in R.C. 2133.11. The statute specifically states that a physician who complies with its terms in administering drugs is "not subject to professional disciplinary action." Were any confusion to exist about the meaning of "professional disciplinary action," the General Assembly defined it in R.C. 2133.01(Y) to mean "action taken by the board or other entity that regulates the professional conduct of health care personnel, including the state medical board and the board of nursing." Thus, contrary to the majority's conclusion, R.C. 2133.01(Y) does not narrowly define "professional disciplinary action" to be "sanctions" that the board imposes, but rather defines it as an action the board commences. From that language, the

legislature conveyed a clear intent to preclude the board from bringing a complying physician before the board for disciplinary proceedings, even if the proceedings do not result in sanctions.

{¶ 37} Indeed, the provisions of R.C. 2133.11 surrounding the language at issue support the statute's clear meaning. R.C. 2133.11 groups "professional disciplinary action" with "civil action." The reference to civil action seems a clear reference to the civil rules that use the term to describe the entire proceedings in a civil matter. Similarly, the use of "action" in connection with "professional disciplinary action" indicates that the entire proceeding, not just the sanction, is intended. Had the legislature intended "professional disciplinary action" to mean only the sanction resulting from the proceedings, it would have used a word like "sanctions," as it did in stating that liability "in damages" is precluded in a civil action.

{¶ 38} Read alone or in the context of the other terms surrounding it in R.C. 2133.11, "professional disciplinary action" includes any proceeding before the board. Because a physician who complies with the statute is immune from board proceedings, appellant is entitled to have determined, outside those proceedings, whether he complied with the statute and can invoke the legislatively granted immunity. Appellant's declaratory action in the common pleas court is an appropriate forum to determine whether he complied with the statute so as to be immune from proceedings before the board.

{¶ 39} If the court determines that appellant is immune, the board may not subject appellant to a disciplinary hearing before the board. If, however, the declaratory action determines that appellant is not immune, then the matter may proceed to the board to determine whether the care appellant rendered fell below the appropriate standard. Accordingly, I conclude that the trial court abused its discretion in dismissing appellant's declaratory judgment action. I would reverse the judgment of the trial court and remand the cause for further proceedings.